LAMONT, Respondent, *v.* VINGER, Appellant.

(No. 4,529.)

(Submitted November 2, 1921. Decided December 12, 1921.)

[202 Pac. 769.]

*Executors and Administrators — Real Property — Administrators' Sales—Void Order of Sale—Absence of Notice— Jurisdiction—Collateral Attack—Waiver—Curative Statutes —Caveat Emptor.*

Executors and Administrators—Property of Intestate—Title in Whom.
    1.  Under section 4819, Revised Codes, title to the property of one who dies intestate passes immediately to the heirs, subject to the control of the district court and to the possession of the administrator for the purposes of administration.

Same—Recovery of Realty by Heir—Statute of Limitations.
    2.  An action to recover real property sold by an administrator under an alleged void order of sale, brought after the limitation prescribed by section 7596, Revised Codes, within which an heir must commence his action had expired, but within the three-year period after reaching his majority (sec. 7597), was not barred.

Same—Recovery of Real Property—Right of Action in Administrator not Exclusive.
    3.  The right given to an administrator by section 7604, Revised Codes, to maintain an action for the recovery of real property of his intestate (if applicable to an action to recover property sold by him under an order of sale) is not exclusive, section 7502 conferring the same right upon the heirs.

Same—Real Property—Administrator's Sale—Absence of Order to Show Cause—Sale Void—Collateral Attack.
    4.  *Held,* that where the proceedings had before the probate court on application by an administrator for an order of sale of real property disclosed that no order to show cause was ever made, published or served upon the parties interested, the sale was void for want of jurisdiction and open to collateral attack.

Same.

5. *Held,* that the general rule that where an order of sale of real property of an intestate recites that an order to show cause was made and due proof of service thereof had to the satisfaction of the court, a purchaser need not look beyond the order and will be protected against a collateral attack, was not satisfied by an order made on the same day on which petition for the order was filed, reciting that the matter was heard "upon due proof to the satisfaction of the court of service according to law of the notice of said hearing," the order showing upon its face that it could not have been issued and served as required by the sections of the Code applicable.

Same—Actions *in Rem*—Process—Jurisdiction.

6. Unless a proceeding is strictly *in rem* a valid judgment cannot be rendered affecting the rights of third parties if they were not served with process or appeared and had an opportunity to be heard.

Same—Real Property of Intestate—Order of Sale—Proceeding *Quasi in Rem*—Process—Jurisdiction.

7. *Held,* that the matter of procuring an order of sale of real property belonging to the estate of an intestate is one *quasi in rem* and not strictly *in rem,* and that therefore failure to make an order to show cause and to serve it substantially in the manner required by the Codes rendered the sale void.

Same—Order of Sale of Real Property—Power of Court Special.

8. The authority of the probate court to order a sale of real property of an intestate is not included in its general jurisdiction over the administration but is special and limited and can be exercised only in the manner prescribed by the statute.

Same—Proceeding to Sell Real Property *in Invitum*—Substantial Compliance With Statutes Necessary.

9. So far as a nonconsenting heir is concerned, the proceeding to sell real property of his ancestor is *in invitum,* and the party who traces his title through such a sale must be able to show a substantial compliance with the law.

Same—Sale of Real Property—Notice Indispensable.

10. In the absence of waiver, notice to the heirs of an intestate of a contemplated sale of real property is indispensable.

Same—Process—Jurisdiction—Waiver—Collateral Attack.

11. A party not served with process who does not voluntarily appear and contest the action upon its merits does not waive the question of jurisdiction by remaining passive, but may thereafter attack the judgment collaterally.

Jurisdiction—Due Process of Law—Curative Statutes—Limit of Curative Power.

12. Under the constitutional provision that no one shall be deprived of property without due process of law, a curative Act cannot go to the extent of supplying jurisdiction where there was none in the first instance because of lack of notice and an opportunity to be heard.

Administrators' Sales—Void Order not Validated by Curative Statute.

13. *Held,* under the above rule (12) that Chapter 4, Laws of 1915, providing that irregularities in obtaining an order of court for the sale of real property of an intestate shall not invalidate the sale was ineffectual to cure the fatal omission of the court to take the steps necessary to give it jurisdiction to make the order.

[61 Mont. 530.]

Constitutional Law—Vested Rights cannot be Destroyed by Statute.
  14.  Vested rights cannot be destroyed by the Legislature.

Same—Void Judgment is Always Void.
  15.  A judgment, void when rendered, will always remain void.

Same—Judgment—Depends upon Jurisdiction Before it is Rendered.
  16.  The validity of every judgment depends upon the jurisdiction of the court before it is rendered, and not upon what may occur subsequently.

Administrators' Sales—*Caveat Emptor* Applies.
  17.  The doctrine of *caveat emptor* applies to an administrator's sale, the purchaser being bound to know the limit of the administrator's authority and determine at his peril whether the proceedings are legal and sufficiently regular to authorize the sale.

*Appeals from District Court, Fergus County; Jack Briscoe, Judge.*

Action by Harry W. Lamont against Ole G. Vinger and another to recover possession of an undivided interest in real estate.   Judgment for plaintiff and defendant Vinger appealed from the judgment and from an order denying a new trial.   Affirmed.

*Messrs. Belden & De Kalb,* for Appellants, submitted a brief; *Mr. H. L. De Kalb* argued the cause orally.

This is a collateral attack upon the order of sale and the order confirming the sale.   Where a recital of the character found in the order of sale and above cited is found in the records, a sale based thereon is not vulnerable to a collateral attack.   (11 R. C. L., secs. 474, 476; *Richardson* v. *Butler,* 82 Cal. 174, 16 Am. St. Rep. 101, 23 Pac. 9; *Applegate* v. *Lexington & Carter Co. Min. Co.,* 117 U. S. 255, 29 L. Ed. 892, 6 Sup. Ct. Rep. 742 [see, also, Rose's U. S. Notes].)

The purchaser is not bound to look beyond the decree. (*Blackman* v. *Mulhall,* 19 S. D. 534, 104 N. W. 250; *Zilmer* v. *Gerichten,* 111 Cal. 73, 43 Pac. 408.)

The action was barred by limitation.   (*Dennis* v. *Bint,* 122 Cal. 39, 68 Am. St. Rep. 17, 54 Pac. 378.)   ''The laches of the trustee while he holds office must be imputed to the beneficiary

and the remedy of the heir is against the administrator."
(See, also, *Wheeler* v. *Bolton,* 54 Cal. 302; *McLeran* v. *Benton,*
73 Cal. 329, 2 Am. St. Rep. 814, 14 Pac. 879.)

The sale cannot be now questioned because of the curative
Act. (*Williamstown Graded Free School District* v. *Webb,* 89
Ky. 264, 12 S. W. 298; *Grignon* v. *Astor,* 2 How. (U. S.) 319,
11 L. Ed. 283 [see, also, Rose's U. S. Notes].) In *McNamara*
v. *Casserly,* 61 Minn. 335, 344, 63 N. W. 880, it is held that the
jurisdiction once acquired in a probate proceeding continues for
the purpose of subsequent sales, decree of distribution and
other matters, without further notice. This court in *State* v.
*Benton,* 12 Mont. 306, 34 Pac. 301, decided that a probate pro-
ceeding of this character is a proceeding *in rem.* In *Myers*
v. *McGavock,* 39 Neb. 843, 862, 42 Am. St. Rep. 627, 58 N. W.
522, the court holds that notice is not jurisdictional in that
such proceedings are *in rem.* (See, also, *Cooper* v. *Sunder-
land,* 3 Iowa, 114, 135, 66 Am. Dec. 52; *Burris* v. *Kennedy,* 108
Cal. 331, 41 Pac. 458.)

It is even held that the legislature may legalize a void act.
(*Fair* v. *Buss,* 117 Iowa, 164, 90 N. W. 527; *Richman* v. *Mus-
catine,* 77 Iowa, 513, 14 Am. St. Rep. 308, 4 L. R. A. 445, 42
N. W. 422.)

It was competent for the legislature to have cut off by a new
statute of limitations the rights of the plaintiff,—in effect the
curative Act so operates. It is the policy of the law to quiet
titles to real estate sold by order of the probate court and in
*Harlan* v. *Peck,* 33 Cal. 515, 91 Am. Dec. 653, it is said: "In
view of that policy merely there can be no distinction between
sales which may be termed void for the want of jurisdiction,
and those which are voidable only." This doctrine has been
reaffirmed in *Ganahl* v. *Soher,* 68 Cal. 95, 97, 8 Pac. 650, where
the sale was void because of invalidity of the appointment of
the acting administrator. (See, also, *Meeks* v. *Vassault,* 3 Sawy.
206, 211, Fed. Cas. No. 9393.)

*Mr. Ralph J. Anderson* and *Mr. Park Smith,* for Respondent, submitted a brief; *Mr. Henry C. Smith,* of Counsel, argued the cause orally.

Upon a careful consideration of the case of *Dennis* v. *Bint,* cited by appellant, we believe this court will · be disposed to disregard it in favor of other and better considered cases, as other courts have done. That this court will not follow decisions of the courts of the state from which the statute is borrowed when such decisions are demonstrably wrong, see: *Brophy* v. *Downey,* 26 Mont. 252, 261, 67 Pac. 312; *Finlen* v. *Heinze,* 28 Mont. 548, 563, 73 Pac. 123; *Oleson* v. *Wilson,* 20 Mont. 544, 547, 63 Am. St. Rep. 639, 52 Pac. 372. The supreme court of Nevada, in *Wren* v. *Dixon,* 40 Nev. 170, Ann Cas. 1918D, 1064, 161 Pac. 722, 167 Pac. 324, refused to follow the case of *Dennis* v. *Bint, supra.* The court there decides that an infant heir is entitled to the full time given him by statute to bring his action. This is the true principle of decision of the instant case; that inasmuch as the title to the real estate vests immediately in the heir upon the death of his ancestor and the statute gives him a right of action at all times, he cannot be barred by virtue of a trust relation set up in cases decided at a time and under statutes when and by which the administrator alone had the right of action. (See, also, *Bacon* v. *Gray,* 23 Miss. 140.) The district court, in administering the Lamont estate, and in attempting to subject the real estate to the payment of debts, was acting in the exercise of a special, limited and statutory jurisdiction, and each step in acquiring jurisdiction strictly as required by statute must appear positively and affirmatively from the record. (*Galpin* v. *Page,* 18 Wall. (U. S.) 350, 371, 21 L. Ed. 959, 964 [see, also, Rose's U. S. Notes]; *Elliott* v. *Fowler,* 112 Ky. 376, 65 S. W. 849; *Myrick* v. *Jacks,* 33 Ark. 425; *Brown* v. *Sceggell,* 22 N. H. 548; *Martin* v. *Williams,* 42 Miss. 210, 97 Am. Dec. 456.) "The records of probate courts must show jurisdiction in order to sustain their proceedings." (*Gibbs* v. *Shaw,* 17 Wis. 197, 84 Am. Dec. 737.)

Proceedings for the sale of the real estate of an intestate are in the nature of an action, of which the presentation of the petition is the commencement and the order of sale is the judgment. (*Broadwater* v. *Richards,* 4 Mont. 80, 2 Pac. 546; *In re Tuohy's Estate,* 33 Mont. 230, 83 Pac. 486; *Campbell* v. *Drais,* 125 Cal. 253, 57 Pac. 994; *Burris* v. *Kennedy,* 108 Cal. 331, 41 Pac. 458; *Pryor* v. *Downey,* 50 Cal. 388, 19 Am. Rep. 656.) Therefore, a service of notice upon persons interested, to-wit, of an order to show cause, is jurisdictional. (*Hill* v. *Taylor,* 99 Mo. App. 524, 74 S. W. 9; *Ball* v. *Clothier,* 34 Wash. 299, 75 Pac. 1099; *Herdman* v. *Short,* 18 Ill. 59, 60; *Brown* v. *Sceggell,* 22 N. H. 548; 10 Ency. Pl. & Pr. 176; 18 Cyc. 700; *Martin* v. *Williams,* 42 Miss. 210, 97 Am. Dec. 456; *Gibbs* v. *Shaw,* 17 Wis. 197, 84 Am. Dec. 737.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In January, 1895, Hannah D. Lamont died intestate in Fergus county, leaving as her heirs at law, W. H. Lamont, her husband, and Charles A. and Harry W. Lamont, her sons, the latter then less than four years old. W. H. Lamont was appointed administrator of the estate, and qualified and entered upon the discharge of his duties. The inventory returned disclosed that the property left by the deceased consisted of 1,550 sheep, subject to a chattel mortgage, and 238 acres of land (particularly described), of the appraised value of $600. Claims were presented and allowed, which, with the costs and charges of administration, amounted to more than $700. The chattel mortgage upon the sheep was foreclosed, and the entire proceeds of the sale were applied in satisfaction of the debt secured by the mortgage.

On March 31, 1898, the administrator presented a petition for the sale of the real estate, and on September 7 following an order of sale was made, notice of the sale given, the property sold to Ole G. Vinger for $1,000, an account of the sale returned, notice of a hearing on the return given and on Jan-

uary 30, 1899, an order was made confirming the sale. Thereafter an administrator's deed was executed, delivered and recorded, and some time later Vinger assumed to mortgage the property to the Bank of Fergus County. On August 2, 1915, Harry W. Lamont commenced this action against Vinger and the bank to recover possession of an undivided one-third interest in the real estate, upon the theory that the sale by the administrator was void. He prevailed in the lower court, and from the judgment entered therein and from an order denying a new trial, defendant Vinger alone appealed.

1. Appellant insists, first, that the trial court erred in re-
[1–3] fusing to hold that plaintiff's cause of action was barred by the provisions of section 7596, Revised Codes.

It is conceded that plaintiff did not become of age until August 10, 1912, so that the three-year period mentioned in the statute above had not expired after he reached his majority and before this action was commenced; but it is contended that because the right of action which the administrator had, was barred three years after the sale, the plaintiff's right of action was barred also. This contention proceeds upon the theory that during the course of administration the administrator alone had the right to prosecute an action for the recovery of the property, or, in other words, that the administrator in virtue of his office was a trustee whose laches were imputable to the beneficiary—plaintiff herein—even though plaintiff was a minor. This theory prevailed under the early California statutes (*McLeran* v. *Benton,* 73 Cal. 329, 2 Am. St. Rep. 814, 14 Pac. 879; *Meeks* v. *Olpherts,* 100 U. S. 564, 25 L. Ed. 735), and appellant contends that the same rule is in force in that state under the present statutes, identical with our sections 7596 and 7597, Revised Codes, and since our statutes were borrowed from California, we should adopt the same construction. In support of the last contention the case of *Dennis* v. *Bint,* 122 Cal. 39, 68 Am. St. Rep. 17, 54 Pac. 378, is cited. On appeal that case was heard first in department, the opinion being prepared by Commissioner Britt. It was heard again

by the court in bank, and the commissioner's opinion is published as the opinion of the court, but of the seven members of the court three dissented outright and the Chief Justice concurred in the result only, and upon an entirely different ground, at the same time indicating disapproval of the views of the commissioner reaffirming the doctrine of *McLeran* v. *Benton* above. Under these circumstances the case is not authority for the proposition now urged upon us. In the commissioner's opinion, sections 1573 and 1574, California Code of Civil Procedure, identical in terms with our sections 7596 and 7597 above, are quoted at length, but no attempt was made to give effect to the last-mentioned section. We submit that the conclusion reached was altogether unwarranted, but in any event the same construction of our statutes is impossible, even though the language is the same. So far as this question is concerned, there has not been any material change in our statutes since the death of the decedent, and for convenience our references are to our present Code, disregarding the amendments made in 1915.

At common law the administrator had no title to, interest in, or right to the possession of the real property of the decedent, and therefore could not maintain an action with respect to it. Whatever authority he has now is derived from the statutes. (2 Schouler on Wills, Executors, and Administrators, 1199, 1603.) By section 4819, Revised Codes, the property, both real and personal, of one who dies intestate, passes to the heirs, subject to the control of the district court and to the possession of the administrator, for the purposes of administration.

Assuming that section 7604, Revised Codes, gives to an administrator the right to maintain an action to recover the possession of real property under circumstances such as are here presented, that right is not exclusive, for section 7502 provides: "The heirs or devisees may themselves, or jointly with the executor or administrator, maintain an action for the possession of the real estate, or for the purpose of quieting

title to or for partition of the same against any one except the executor or administrator.'' Section 7596 is a statute of limitations which fixes the time generally within which an heir or other claiming under the decedent must commence his action, and section 7597 provides: ''The preceding section shall not apply to minors or others under any legal disability to sue at the time when the right of action first accrues; but all such persons may commence an action at any time within three years after removal of the disability.''

In our judgment, the foregoing provisions are too plain to admit of construction. If the administrator had a right to prosecute an action for the recovery of the property which he had sold, that right was not exclusive. The right of the heir is secured to him in no uncertain terms, and since plaintiff commenced this action within three years after reaching his majority, his cause of action was not barred. (*Wren* v. *Dixon*, 40 Nev. 170, Ann. Cas. 1918D, 1064, 161 Pac. 722.)

2. In the proceedings taken to procure an order for the sale [4–5] of this property no mention whatever is made of an order to show cause, the publication of the same, or proof of publication or other service. Section 7561, Revised Codes, provides that the administrator may sell the real property of the estate when necessary to procure funds to pay family allowance, debts of the estate, charges of administration or legacies. Section 7562 enumerates the matters which must be made to appear in the verified petition for the order of sale. Section 7563 provides that if it appears to the court or judge, from such petition, that it is necessary to sell the whole or some portion of the real estate for any of the purposes mentioned in section 7562, an order must be made, ''directing all persons interested in the estate to appear before the court or judge, at a time and place specified, not less than four nor more than ten weeks from the time of making such order, to show cause why an order should not be granted to the executor or administrator to sell so much of the real estate of the decedent as is necessary.'' Section 7564 provides that the order to show

cause must be served personally on all persons interested in the estate, including heirs, or be published four successive weeks in a newspaper in the county, unless all persons interested join in the petition or assent thereto in writing, in which event the notice may be dispensed with. Section 7565 provides: "The court or judge, at the time appointed in such order, or at such other time to which the hearing may be postponed, upon satisfactory proof of personal service or publication of a copy of the order, by affidavit or otherwise, if the consent in writing to such sale of all parties interested is not filed, must proceed to hear the petition, and hear and examine the allegations and proofs of the petitioners, and of all persons interested in the estate, who may oppose the application," etc. Section 7567 provides for an order of sale and the circumstances under which it may direct the sale of all of the real estate belonging to the estate.

Counsel for appellant concede that there is not any evidence that an order to show cause was ever made or served, except the recital in the order of sale, but they do insist that there is a recital therein that due notice had been given, and that this is sufficient as against a collateral attack. It is the general rule that if the order of sale recites that an order to show cause was made and due proof of service thereof had to the satisfaction of the court, a purchaser need not look beyond the order, and will be protected as against a collateral attack. (*Zilmer* v. *Gerichten,* 111 Cal. 73, 43 Pac. 408.) The order herein recites that the petition was filed on March 31, 1898, and then continues: "Said matter coming on regularly to be heard on the thirty-first day of March, 1898, and upon due proof to the satisfaction of the court of service according to law of the notice of said hearing, and all and singular the law and the evidence being by the court understood and duly considered, whereupon, it is ordered," etc. Standing alone, that language means that the only hearing upon the petition was the one had the very day the petition was filed; therefore it was impossible that an order to show cause could have been

issued and served as required by law; and there are other circumstances disclosed by the probate record which compel the conclusion that an order to show cause never was made or served.

But counsel contend that, though this be conceded, it does [6, 7] not render the sale void: (a) Because the proceeding is one *in rem;* and (b) because of our curative statute.

(a) The court acquired jurisdiction of the subject matter by the proceedings leading up to and including the petition for sale, and it may be conceded for the purposes of this case that if the matter of procuring an order of sale of real property belonging to the estate of an intestate is a proceeding strictly *in rem,* notice is a matter of courtesy and not of necessity, and the failure to give it in this instance was an irregularity only, and did not render the sale void. (Van Fleet on Collateral Attack, sec. 405; 2 Black on Judgments, sec. 794.) In the section just referred to, Van Fleet states that in Alabama, Arkansas, Louisiana, Texas and Washington such a proceeding is held to be one strictly *in rem,* and probably two or three other states may be included in the same class; but by the overwhelming weight of authority such a proceeding is classed as one *quasi in rem.* (2 Black on Judgments, sec. 808; 23 Cyc. 1411.) It is a general rule that unless the proceeding is strictly *in rem* a valid judgment cannot be rendered affecting the rights of third parties unless they are served with process or appear and have an opportunity to be heard. (23 Cyc. 1408.) In California—from which state we borrowed our Probate Practice Act—it is held that the proceeding is *quasi in rem,* and that the failure to make an order to show cause and to serve it substantially in the manner required by the statute renders the sale void. (*Campbell* v. *Drais,* 125 Cal. 253, 57 Pac. 994.) The facts of that case cannot be distinguished from the facts of the case under consideration.

The authority of the probate court to order a sale of realty [8] is not general, but special and limited. It is derived from the statute, and can be exercised only for the purposes

mentioned and in the manner prescribed by statute. (*Haynes* v. *Meeks*, 20 Cal. 288; *Packer's Estate*, 125 Cal. 396, 73 Am. St. Rep. 58, 58 Pac. 59; *Noon's Estate*, 49 Or. 286, 88 Pac. 673, 90 Pac. 673.) As observed before, the title to the property vests in the heirs immediately upon the death of the intestate. So far as the nonconsenting heirs are concerned, the pro-[9] ceeding to sell the real estate is *in invitum*—a proceeding for the forced divestiture of their title—and since it is only by the law that their title can be taken away, the party who traces his title through the law must be able to show a substantial compliance with the law. (*Gregory* v. *McPherson*, 13 Cal. 562; *Townsend* v. *Gordon*, 19 Cal. 208.) The proceeding to sell is independent in the sense that jurisdiction over it is invoked by filing the petition, and is not included in the general jurisdiction over the administration. (*Richardson* v. *Butler*, 82 Cal. 174, 16 Am. St. Rep. 101, 23 Pac. 9.) Section 7565, Revised Codes above, provides for a hearing upon the petition, but only after satisfactory proof of service of the order to show cause has been made. In other words, until such satisfactory proof of service has been presented, the court is without authority to hear the petition or take any action with reference to it.

It is the general rule that in the absence of waiver, notice [10, 11] to the heirs is indispensable. (*Mitchell* v. *Bowen*, 8 Ind. 197, 65 Am. Dec. 758; *Fell* v. *Young*, 63 Ill. 106; *Mikel* v. *Hicks*, 19 Kan. 578, 27 Am. Rep. 161.) The reason for this rule is obvious. The heirs, being interested in the property, have the right, secured to them by statute, to oppose the sale and to be heard. At such hearing they may offer any evidence tending to show that the sale is unnecessary, and since a necessity for the sale is the only condition upon which it may be ordered, if they are successful in their contention the court is without authority to make the order. For example: Upon the hearing the heirs may contest the validity of the claims which constitute the indebtedness upon the existence of which the petition to sell is based (*Beckett* v. *Selover*, 7 Cal. 215,

68 Am. Dec. 237; *Schroeder's Estate,* 46 Cal. 304; *Crosby's Estate,* 55 Cal. 582); or they may be able to show that the realty is yielding income sufficient to discharge all valid claims, or to pay them in part, and thereby either dispense with the necessity for a sale altogether, or reduce the amount of the realty to be sold (*Haynes* v. *Meeks,* above); or they may be able to convince the court that the best interests of the estate will be served by borrowing the money (sec. 7547, Rev. Codes), or mortgaging the property instead of selling it (secs. 7600, 7601); but whether they are successful in any respect is immaterial. They are entitled to be heard, and, if not afforded an opportunity, their interests cannot be affected. (*Pearson* v. *Pearson,* 46 Cal. 609.)

Speaking of statutes identical with ours providing for a verified petition, an order to show cause and service of notice, the California court said: "Since the procedure is one in which there are no adversary parties present at all times in court, it is reasonable to hold, as has always been held, that these acts are essential to the power on the part of the court to order the sale. In that sense the petition and notice are jurisdictional." (*Burris* v. *Kennedy,* 108 Cal. 331, 41 Pac. 458.)

Counsel for appellant insist that this court is committed to the doctrine that a proceeding of this character is one *in rem,* and in support thereof cite *State ex rel. Ruef* v. *District Court,* 34 Mont. 96, 115 Am. St. Rep. 510, 9 Ann. Cas. 418, 6 L. R. A. (n. s.) 617, 85 Pac. 866. The language therein employed must be understood in the light of the fact that we had under consideration the effect of a judgment of a sister state admitting a will to probate. The conclusion reached in that case does not infringe upon the rule that probate proceedings generally are *quasi in rem.* (2 Black on Judgments, sec. 635; 15 R. C. L. 637.)

Beginning with the early case of *Broadwater* v. *Richards,* 4 Mont. 80, 2 Pac. 546, this court held that "Proceedings for the sale of the real estate of an intestate are in the nature of

an action of which the presentation of the petition is the commencement and the order of sale is the judgment."

In *Davis' Estate,* 35 Mont. 273, 88 Pac. 957, it was said: "The notice required in probate proceedings serves the purpose of a summons in ordinary actions." In *State ex rel. Shields* v. *District Court,* 24 Mont. 1, 60 Pac. 489, it was held that the presentation of a verified petition and notice to all persons interested were necessary prerequisites to obtain an order to lease real property belonging to an estate.

Expressions may be found in some of our decisions to the effect that probate proceedings are in the nature of proceedings *in rem,* but it is clear from a consideration of the particular questions decided that it was never intended to hold that a failure to give notice to the heirs or other persons interested in a proceeding of this character is an irregularity only.

This proceeding is not analogous to the one to foreclose a mortgage or lien upon real property. A mortgage is the voluntary contract of the property owner, while a lien is impressed upon particular property by the law. An allowed claim against an estate or a charge for expenses of administration is not in any sense a lien upon the property belonging to the estate. (Sec. 7536, Rev. Codes.)

It is suggested by counsel for appellant that, even though this plaintiff was not notified of the application to sell, he had an opportunity to oppose confirmation. This may be granted, but it does not mend matters. A party defendant to a civil action, who has not been served with summons, may appear voluntarily and contest the action upon the merits, but he is not required to do so, and he does not waive the question of jurisdiction by remaining passive, but may thereafter attack the judgment collaterally.

It is our conclusion that by failing to make an order to show cause and requiring service of notice, the court did not acquire jurisdiction of the person of this plaintiff; that the order of sale was void and open to collateral attack, and, as a matter of course, the sale made pursuant to such order did

not operate to divest plaintiff of his interest in the property. (18 Cyc. 724.)

It is an elementary rule that in judicial proceedings the law of the land requires a hearing before condemnation, and judgment before dispossession. (Cooley's Constitutional Limitations, p. 506.)

(b) Finally, counsel for appellant contend that, inde-
[12, 13] pendently of every other consideration, the defect or irregularity in the proceedings arising from the failure to make an order to show cause or give notice was cured by the provisions of Chapter 4, Laws of 1915. That Act, after referring to sales by executors, administrators or guardians, continues: "And all irregularities in obtaining the order of the court for such sale, and all irregularities or defects in making or conducting such sale by said executor or administrator or guardian shall be disregarded, and such sale shall not be invalidated by reason of any such defect or irregularity."

The limit to which curative or healing statutes may extend has been the subject of much judicial consideration. The general rules applicable are quite well settled, but in the application of these rules to concrete cases a great diversity of opinion is manifested. In Cooley's Constitutional Limitations, 530–545, the principal rules are stated as follows: "A retrospective statute curing defects in legal proceedings where they are in their nature irregularities only, and do not extend to matters of jurisdiction, is not void on constitutional grounds, unless expressly forbidden. * * * But the healing statute must in all cases be confined to validating acts which the legislature might previously have authorized. It cannot make good retrospectively acts or contracts which it had and could have no power to permit or sanction in advance. * * * If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute.

And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law."

Bearing in mind that immediately upon the death of the intestate, title to the property vests in the heirs, and that proceedings to obtain an order to sell the real property have for their object divesting the heirs of their title and are *quasi in rem* only, we conclude that the principle announced by the authorities that notice to the heirs and others interested and an opportunity to be heard are essential, rests upon the fundamental rule of law incorporated in our Constitution that no one shall be deprived of his property without due process of law, and that notice and an opportunity to be heard are indispensable elements of due process. Accepting this as correct, and it follows that it was not within the power of the legislature, by previous enactment, to dispense with notice, and accordingly, the Act did not, and could not, cure the omissions in these proceedings.

It may be conceded that it is within the power of the legislature to repeal section 4819 above, and make other provision for the disposition of property belonging to one who dies intestate, but until that section is repealed or modified materially the title vests in the heirs, and cannot thereafter be taken from them except by proceedings in harmony with the due process clause of the Constitution.

Speaking of statutes designed to remedy defects in probate proceedings particularly, the author of the article in Corpus Juris says: "These generally cure merely those defects which do not concern jurisdictional steps, and it is usually held that they cannot constitutionally operate to give effect to a sale which is void for want of jurisdiction." (24 C. J. 694. See, also, 18 Cyc. 830; *McGillic* v. *Corby*, 37 Mont. 249, 17 L. R. A. (n. s.) 1263, 95 Pac. 1063; *Davidson* v. *Wampler*, 29 Mont. 61, 74 Pac. 82.) These authorities all proceed upon fundamental [14–16] principles of constitutional law, among which are the

61 Mont.—35

following: Vested rights cannot be destroyed by the legislature. (*Shea* v. *North-Butte Min. Co.*, 55 Mont. 522, 179 Pac. 499.) A judgment void when rendered will always remain void. The validity of every judgment depends upon the jurisdiction of the court before it is rendered, not upon what may occur subsequently. (*Pennoyer* v. *Neff*, 95 U. S. 714, 728, 24 L. Ed. 565.)

We need not stop to review the case of *Grignon* v. *Astor*, 2 How. (U. S.) 319, 11 L. Ed. 283, and other authorities cited by counsel for appellant which follow that leading case. It is sufficient to say that a rule different from the one we have adopted prevails in every jurisdiction in which a proceeding of this character is held to be strictly *in rem*, wherein seizure of the property itself constitutes notice to all persons interested.

We conclude by remarking that the doctrine of *caveat* [17] *emptor* applies to an administrator's sale. The purchaser is bound to know the limit of the authority of the one who assumes to sell, and must determine at his peril whether the proceedings are legal and sufficiently regular to authorize the sale. (11 R. C. L. 350; 18 Cyc. 826.)

We have adopted the views which to us appear to be supported by reason and by the weight of authority, though decided cases to the contrary may be found.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and GALEN concur.