LARSON, et al., Respondents, v. WHITMER, et al., Appellants.
No. 8965.
Submitted October 11, 1950. Decided December 2, 1950.
224 Pac. (2d) 983.

Mr. George W. Farr, Mr. Roland V. Colgrove, and Messrs. Farr and Colgrove, all of Miles City, for appellants.

Mr. P. F. Leonard, Mr. W. B. Leavitt, Miles City, and Mr. George A. McGee, Minot, N. D., for respondents.

Mr. Farr and Mr. Leavitt argued orally.

MR. JUSTICE ANGSTMAN:

This action was commenced on June 26, 1947, to set aside a judgment obtained by defendants Whitmer and McPhail against

defendant Arthur H. Markley individually and as administrator of the estate of John J. McCarter, deceased, affecting title to certain described lands and to quiet title to such land in plaintiffs.

The facts are these:

John J. McCarter, a resident of Garfield county, died intestate on September 30, 1934, leaving real and personal property in that county and elsewhere in Montana. He left as his only heirs his widow Katherine and his mother Margaret J. McCarter.

Arthur H. Markley was appointed administrator of the estate. All of the real estate, excepting what is involved herein consisting of 1,253.93 acres, was lost through tax sale proceedings.

The administrator was ordered to pay to the widow an allowance of $40 per month which he paid so long as money was available. An inventory and appraisement was filed on April 9, 1935, wherein the lands involved here were appraised at the sum of $5,340.00.

Margaret J. McCarter died on January 6, 1936, leaving as her heirs plaintiffs Cynthia M. Liebig, Adelaide N. Wiswell, Melvin M. Walker and C. A. McCarter.

The other plaintiffs are the only heirs of Katherine McCarter who died before the commencement of this action. All personal property of the estate was sold by court order for $626.75.

The first annual account of the administrator showed receipts of $4,790.39 and disbursements in the sum of $4,640.75, leaving a balance of $149.64. This account was approved by court order on November 23, 1937.

No further account has been filed by the administrator. No claims against the estate were filed. On April 19, 1935, the administrator filed his petition to sell the real estate here involved. It was ordered sold by the court, but no report of sale pursuant to the order was ever filed.

The only income received by the administrator after the filing of his account was $75 per year for three years as rental of the property involved.

The taxes on the land here in question became delinquent for the years 1934 to 1940 amounting to $616.32. On November 22, 1940, Garfield county gave notice that it would apply for a tax deed on January 30, 1941.

In January 1941 the administrator made an oral agreement with defendants Whitmer and McPhail to sell the property to them for $1,800 payable in installments. On April 1, 1941, the agreement was reduced to writing and signed. By inventory filed March 14, 1941, the appraised value was reduced to $1,800 and on January 8, 1947, it was again appraised in the same amount.

On January 31, 1941, Garfield county took a tax deed. Acting under Chapter 181, Laws of 1939, on February 3rd, it executed a taxpayer's contract for the sale of the land to Markley, administrator, for $616.32, payable in installments. The administrator, having no money with which to make the down payment, borrowed it from his daughter, May Markley, with the understanding that it was to be repaid to her from payments to be made by the Whitmers and McPhail. The repayment was actually made on April 1, 1941. No order of court was requested or obtained for the making of either contract and no confirmation of the sale was ever made.

The contract with Whitmers and McPhail was fully paid in 1944. The administrator paid the county in full, pursuant to the taxpayer's contract.

On April 5, 1945, a quit claim deed was executed by Garfield county to Markley, administrator. In 1946 Whitmer and McPhail sold the land along with others to Ancel Walters, the latter taking possession in April 1947, but with knowledge that it would take about six months to get the title in shape. A down payment was made and other payments were held up until title could be adjudicated.

On January 8, 1947, a petition for the sale of the land was again filed. On January 25, 1947, an order of sale was made and notice of sale was published and posted calling for bids. Appel-

lants made a bid in the sum of $1,800 and Dave Huston filed a sealed bid for $3,800 which was refused and rejected by the administrator.

On February 17, 1947, the administrator filed a return of sale reporting the sale to defendants Whitmer and McPhail for $1,800 and asking for an order of confirmation. Objections were filed by plaintiff heirs and Dave Huston. The return has not been heard. The administrator filed a supplemental return and account of sale on June 22, 1949. Objections were again filed and no hearing has been had thereon.

On June 28, 1949, the plaintiff heirs filed petition for a sale of the real estate and objections were filed by the administrator upon the ground that he had already sold the land to Whitmer and McPhail. On March 12, 1947, Whitmer and McPhail commenced action No. 1495 in Garfield county against Markley as administrator and his wife Katie Markley to have it adjudicated that the administrator held the legal title to the land in trust for them and requiring defendants in that action to execute a deed to them covering the lands in question. The administrator and Mrs. Markley, acting on advice of their counsel, allowed the action to go by default and a judgment was entered for the relief demanded. A deed was executed by Markley individually and as administrator and by his wife to the Whitmers and McPhail pursuant to the judgment on April 14, 1947.

This action was brought to set aside the judgment in action No. 1495 and to quiet title in plaintiffs to the lands in question.

The court after trial made findings of fact embracing the facts above recited and in addition found that there was no evidence of fraud in connection with the repurchase from the county or for the sale to the Whitmers and McPhail.

As conclusions of law the court found among other things that the judgment in action No. 1495 is void as to the heirs of John J. McCarter; deceased, since they were not made parties to the action nor were they represented in the action; that the deed from

Markley individually and as administrator and by his wife to the Whitmers and McPhail is null and void and of no effect.

The court ordered the probate proceedings to be continued with respect to the land in question. From that judgment defendants have appealed. Appellants contend that the court erred in holding that the judgment in case No. 1495 was a nullity. Their contention is that it was not necessary that the heirs be made parties to the action since the administrator who represented the heirs was a party. It is true that in the settlement of an estate in the statutory method the administrator represents the heirs. But here there was a departure from the method provided by statute to divest the heirs of title to their property. It should be remembered that upon the death of McCarter title to lands owned by him vested immediately in his heirs subject to the control of the court and to the possession of the administrator for the purpose of administration. R. C. M. 1947, sec. 91-402.

When the administrator bought the land from the county under the right granted by Chapter 181, Laws of 1939, the title was taken for the benefit of the heirs of John J. McCarter since they were the only ones who had the preference right under that Chapter.

The statute provides the only method by which the heirs may be divested of title to their property in the process of administering the estate and purchasers from an administrator are bound to take notice of these statutory limitations. Lamont v. Vinger, 61 Mont. 530, 202 Pac. 769. The statute provides: "No sale of any property of an estate of a decedent is valid unless made under order of the district court, or a judge thereof, except as otherwise provided in this chapter. All sales must be made under oath reported to and confirmed by the court or judge before the title to the property sold passes." R. C. M. 1947, sec. 91-2803.

Under this section an order of sale standing alone is not sufficient to pass title from the heirs to a purchaser. There must also be a confirmation of the sale as a condition precedent to

the passing of the title. 34 C. J. S., Executors and Administrators, sec. 608, p. 585. The reason for this rule is plain under our statute which provides in substance that if at the hearing of the return of sale an offer of ten per cent more in amount than that named in the return be made to the court by a responsible person, "it is in the discretion of the court or judge to accept such offer and confirm the sale to such person, or to order a new sale." R. C. M. 1947, sec. 91-3016.

That is the situation presented here. There has been no confirmation of the sale and an offer of more than ten per cent in amount and in fact in more than double the amount paid by defendants Whitmers and McPhail has been made.

The attempt by the purchasers to thwart these statutory provisions and to divest the probate court of jurisdiction by moving into equity cannot be sanctioned where, as here, there is no showing that the probate court would not afford adequate remedy. Compare, 19 Am. Jur., Equity, sec. 174, p. 157.

The court was right in setting aside the judgment in case No. 1495. This conclusion is not affected by the fact that the court found that there was no fraud in connection with the repurchase from the county or the sale to the Whitmers and McPhail.

The test here is not what induced the repurchase from the county and the attempted sale to Whitmers and McPhail but what prompted resort to the equitable remedy sought in case No. 1495 when the matter was pending in the probate court as provided by statute and where adequate remedy was available.

The heirs would have been bound by whatever was properly done in the probate court but they could not be expected to anticipate that attempted purchasers would seek to deprive them of title to their property otherwise than as the statute requires and by resort to an equitable remedy to which they were not made parties.

Since the heirs could not be deprived of title to their property without being made parties to an action for that purpose, the

judgment in case No. 1495 which attempted to do so was void for want of jurisdiction over necessary parties and subject to either direct or collateral attack. Hence it is unnecessary to discuss the question whether this is a direct or collateral attack—a point upon which counsel have argued at length.

Since we hold that the trial court did not err against appellants we are not called upon to determine whether the court committed compensating error against respondents.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES FREEBOURN, METCALF and BOTTOMLY, concur.